```
IN THE UNITED STATES BANKRUPTCY COURT
    FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| CAMILLE A. CAMERON, | : | BANKRUPTCY NO.: 5-15-bk-00248-JJT |
| aka Camille Alexia Cameron, aka Camille Cameron, dba C & C Couture Luxury Designs, dba Golden Touch | : | |
| DEBTOR | : | |
| CAMILLE A. CAMERON, | : | {**Nature of Proceeding**: Motion to Dismiss filed by Wells Fargo Bank (Doc. #5) and Motion to Dismiss filed by U.S. Bank National Association and Rushmore Loan Management Services (Doc. #13)} |
| PLAINTIFF | : | |
| vs. | : | |
| WELLS FARGO BANK, N.A., ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, U.S. BANK NATIONAL ASSOCIATION, Trustee for RMAC Trust, Series 29106-CTT, and RUSHMORE LOAN MANAGEMENT SERVICES, LLC, | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 5-17-ap-00012-JJT** |

# OPINION

In a six-count Complaint, the Debtor, Camille Cameron, has alleged various violations of certain consumer protection laws against Wells Fargo Bank, N.A. ("Wells Fargo"); Allstate Property and Casualty Insurance Company ("Allstate"); U.S. Bank, N.A. ("US Bank"); and Rushmore Loan Management Services, LLC ("Rushmore"). Her final Count challenges the Proof of Claim of US Bank, Claim #5. Wells Fargo, US Bank, and Rushmore have responded with Motions to Dismiss under Rule 12. Allstate has not responded to the Complaint.

The Debtor filed this Chapter 13 bankruptcy on January 26, 2015. The Debtor alleges that she has been a resident of her home, the collateral of the lienholder Defendants, since 2009. In 2013, her property insurance carrier, Allstate, advised her that it had information that the

residence was vacant. This information ostensibly came from Wells Fargo. (Doc. #1 at ¶ 12.) Wells Fargo is identified as the "holder and or servicer of the mortgage." (Doc. #1 at ¶ 11.) Even though the Debtor presumably assured Allstate that the residence was occupied, Allstate allegedly required confirmation from Wells Fargo. Allstate cancelled the policy on December 12, 2013, and Wells Fargo purchased force place insurance[1] at more than double the expense. Almost two years later, the Debtor obtained insurance and the force place insurance was cancelled.

Count I of Debtor's Complaint alleges that Wells Fargo violated the Fair Debt Collection Practices Act (FDCPA) by communicating false information to Allstate and not correcting it. In its Motion to Dismiss, Wells Fargo asserts that there is a one year statute of limitation in the FDCPA, 15 U.S.C. § 1692k(d), and the statute would have expired well before the Debtor's bankruptcy in 2015.

Typically, the statute of limitations is an affirmative defense to be raised in an Answer. Nevertheless, if, on the face of the complaint, the defense is apparent, it can be raised in a motion to dismiss. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3rd Cir. 1978). From the allegations set forth in the Complaint, assumed accurate for purposes of disposing of the Motion to Dismiss, any allegedly false statement directed by Wells Fargo to Allstate occurred well before a year prior to the Debtor's bankruptcy. The statute of limitations would bar litigation, and therefore, the Motion to Dismiss Count I will be granted.

Count II is also advanced under the FDCPA and is directed against Wells Fargo and Rushmore. Rushmore is alleged to be a "successor" of Wells Fargo with regard to the mortgage. (Doc. #1 at ¶ 42.) The only involvement by Rushmore is identified in ¶ 40 of the Complaint as

---

[1] To borrow from *Jones v. Gen. Ins. Co. of America,* Civil Action No. 07-0855-WS-C, 2009 WL 1537866, at *1, fn. 4 (S.D. Ala. May 29, 2009), "this term is variously called 'force place insurance,' 'forced placed insurance,' 'forced place insurance' or 'force placed insurance.' The Court makes no findings as to which of these permutations is technically most accurate; however, in the interest of consistency, the term 'force place insurance' will be used . . . to describe the coverage . . . ."

continuing to charge and attempting to collect the cost of the force place insurance. The alleged violation rests on § 1692f(1) of the statute. In brief, that provision considers the collection of an amount not authorized to be a violation of the statute. The Complaint alleges that, for proper or improper reasons, Allstate gave the Debtor two-months notice that her insurance policy would be cancelled. (Doc. #1 at ¶ 25.) Two months later, Wells Fargo purchased force place insurance at a much higher premium. There is no allegation that the Debtor secured alternative insurance in that two month gap, and I consider that a material fact in determining whether securing force place insurance was reasonable. If the insurance on the property indeed had lapsed, then Wells Fargo appears entirely justified in securing this more expensive insurance notwithstanding the possibility that it, Wells Fargo, was responsible for the homeowner's policy cancellation. There appears to be an obligation in the mortgage for the mortgagor to secure and maintain insurance on the premises, and there is no allegation that the Debtor made an attempt to reinsure until years after the cancellation. I am satisfied that merely collecting reimbursement for force place insurance is not a violation of 15 U.S.C. § 1692f(1). I am satisfied that Count II of the Complaint must be dismissed.

Count III of the Complaint alleges that Wells Fargo violated certain provisions of the Fair Credit Extension Uniformity Act (FCEUA) by communicating with Allstate that the mortgaged premises was vacant, all of which violates 73 P.S. §§ 2270.4(b)(3) and 2270.4(b)(5)(x) (West).

The language of 73 P.S. § 2270.4(b)(3) (West) reads:

> (3) Except as provided in paragraph (1), without the prior consent of the consumer given directly to the creditor or the express permission of a court of competent jurisdiction or as reasonably necessary to effectuate a postjudgment judicial remedy, a creditor may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, a debt collector, the attorney of the debt collector or the attorney of the creditor.

73 P.S. § 2270.4(b)(3) (West)

Assuming the allegation of Wells Fargo's contact with Allstate as true, as I must when

faced with a Rule 12 motion, this certainly appears to allege creditor contact with another not exempted by statute regarding an obligation owing by the Debtor.

Wells Fargo responds by suggesting that communications with a debtor's insurance company regarding coverage is not "in connection with the collection of any debt." Generally speaking, remedial statutes are interpreted liberally. *Commonwealth v. Shaleen*, 215 Pa. 595, 64 A. 797 (1906). Now, one would think that a secured creditor would insist on the right to contact an insurance company regarding coverage of its collateral, but I won't presume that either the loan documents provided that consent, or that the Pennsylvania legislature created an absurd provision when enacting this specific legislation designed to curtail unfair and/or deceptive trade practices.[2]

The allegation that Wells Fargo violated § 2270.4(b)(5)(x) is more problematic. That provision states:

> (5) A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
> . . .
> (x) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

73 P.S. § 2270.4(b)(5)(x) (West)

While an alleged communication of this nature may relate to the terms of the agreements between the parties, it is difficult for me to fathom how advising Allstate that the Debtor's residence was vacant, even if untrue, would assist Wells Fargo in collecting a debt. I, therefore, dismiss that portion of Count III that alleges a violation of § 2270.4(b)(5)(x).

Count IV, pursuant to the same Pennsylvania act, alleges a violation by both Wells Fargo

---

[2] "If Congress has mistakenly disguised its actual intent by incorporating language pointing in a different direction, it is not up to us to rewrite the statute unless, perhaps, a literal reading produces a truly absurd result. See *Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892)." *Napotnik v. Equibank & Parkvale Savings Ass'n*, 679 F.2d 316, 321 (3rd Cir.1982).

and US Bank of § 2270.4(b)(6)(I).  This subsection reads:

> (6)  A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
>    (I)  The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

73 P.S. § 2270.4(b)(6)(I) (West)

Debtor alleges that the Defendants, Wells Fargo and US Bank, secured force place insurance despite the fact that the Debtor had insurance on the property.  The Debtor does not make the allegation that this expenditure was unjustified.  In fact, the Debtor acknowledges in the Complaint that her insurance terminated on December 12, 2013 (Doc. #1 at ¶ 25) and did not reinstate until August, 2015 (Doc. #1 at ¶ 34).

In the absence of an allegation that the Defendants' expenditures were unauthorized by the loan agreement, this Count must fail.

Count V of the Complaint, against Allstate, Wells Fargo, Rushmore, and US Bank, arises under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).  73 P.S. § 201-1 (West).  The relevant section reads:

> (4)  "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:
>   . . .
>    (xxi)  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(4)(xxi) (West)

Assuming all allegations are true, at best Wells Fargo is alleged to have communicated to Allstate the false statement that the subject premises were vacant, when they knew or should have known that it was untrue.

Rushmore as the alleged servicer (Doc. 1 at ¶ 38) and US Bank, as successor to Wells Fargo (Doc. #1 at ¶ 41), are not alleged to have engaged in any deceptive or fraudulent conduct.

Accordingly, the Count must fail as to them but may survive against Wells Fargo.  Count V will be dismissed as to Rushmore and US Bank only.

Count VI against US Bank is a request to determine secured status that I view as the equivalent of an Objection to the Proof of Claim filed by US Bank at Claim No. 5.  Count VI will go forward as such, and the Motion to Dismiss Count VI will be denied.

My Order will follow.

By the Court,

/s/ John J. Thomas

John J. Thomas, Bankruptcy Judge (CMP)

Date: February 28, 2018

[K:\Cathy\Opinions-Orders filed 2018\5-17-ap-00012-JJT_Cameron pdf]     6

Case 5:17-ap-00012-JJT    Doc 21    Filed 02/28/18    Entered 02/28/18 14:49:00    Desc
Main Document    Page 6 of 6